6

J. RUSSELL CUNNINGHAM, State Bar #130578
J. LUKE HENDRIX, State Bar #271424
GABRIEL P. HERRERA, State Bar #287093
DESMOND, NOLAN, LIVAICH & CUNNINGHAM
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651

Attorneys for Chapter 7 Trustee
J. MICHAEL HOPPER

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>PAULINO T. CHAVEZ and MARIE TERESA C. CHAVEZ,<br><br>Debtors. | Case No. 09-38425-A-7<br>Chapter 7<br><br>DCN: DNL-3<br><br>Date: May 6, 2013<br>Time: 10:00 a.m.<br>Place: Dept. A Courtroom 28<br>501 I Street, 7th Floor<br>Sacramento, CA. 95814 |

## MOTION TO APPROVE SALE OF ESTATE PROPERTY

J. MICHAEL HOPPER ("Trustee"), in his capacity as trustee of the Chapter 7 bankruptcy estate of PAULINO T. CHAVEZ and MARIE TERESA C. CHAVEZ (collectively "Debtors"), hereby moves for authority to sell the bankruptcy estate's interest in a money judgment entered in favor of the estate and against DAYSTAR INVESTMENTS, INC. ("Daystar"), in the amount of $203,850, together with prejudgment interest in the amount of $88,019.60, entered on May 31, 2011 in Adversary Proceeding No. 11-02069, Eastern District of California Bankruptcy Court ("Judgment"), to LUKE J. GREZAFFI ("Assignee"), for the purchase price of $150,000, subject to Bankruptcy Court approval and overbidding at the sale hearing. In support thereof, Trustee submits the following:

///

## JURISDICTION AND BACKGROUND

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).

2. On August 28, 2009, the Debtors commenced the above-captioned bankruptcy case by filing a voluntary Chapter 7 petition. Trustee is the duly appointed trustee of the Debtors' Chapter 7 bankruptcy estate.

3. The Debtors' Schedule B lists among the assets of the bankruptcy estate a contingent claim related to the Debtors' written loan agreement with Daystar, a California corporation, wherein the Debtors agreed to loan $151,000 to Daystar in exchange for a Promissory Note ("Note"). The Note promised to pay the Debtors $151,000 in principal and $52,850 in interest, for a total amount of $203,850, due and payable by January 31, 2007. Trustee understands that the Debtors invested their funds with Daystar as part of a real estate investment scheme involving members of Daystar's affiliate General Assembly Church and that the investments were used in part to fund Daystar's purchase of certain Louisiana real property identified below.

4. On January 31, 2011, Trustee initiated Adversary Proceeding No. 11-02069 against Daystar asserting breach of contract and related common counts on account of the Note. On May 31, 2011, default judgment was entered in favor of Trustee and against Daystar in the amount of $203,850, together with prejudgment interest in the amount of $88,019.60.

5. On June 27, 2011, Trustee caused an abstract of judgment to be recorded with the Ascension Parish Clerk of Court, encumbering certain real property held by Daystar described as approximately 107 acres of unimproved land in Ascension Parish, Louisiana ("Louisiana Property"). After engaging in efforts to identify assets of Daystar, including examining Daystar's principal Michael Parker and reviewing public records, Trustee is unaware of any other assets of Daystar that could be executed against to satisfy the Judgment.

6. Assignee holds a lien against the Louisiana Property on account of a mortgage executed by Daystar in favor of Assignee in the principal amount of $395,000, together with interest at the rate of 12% per annum upon default ("Mortgage"). The Mortgage was recorded with the

Ascension Parish Clerk of Court on May 25, 2005. The Mortgage secured the non-cash balance owed to Assignee by Daystar in connection with Daystar's purchase of the Louisiana Property from Assignee on May 25, 2013 for the purchase price of $1,970,000. There has been no development of the Subject Property since Daystar purchased it in 2005. Assignee contends that the Mortgage is in default based on Daystar's failure to pay property taxes beginning with the 2009 assessment which became past due on January 1, 2010. Assignee contends that on account of the Mortgage and the underlying loan, he is due the full principal amount of $395,000, together with interest in the amount of $153,887 and attorney fees in the amount of $54,888 through March 31, 2013.

7. Trustee's review of an abstract report issued on the Louisiana Property reveals that there are unpaid property taxes owing on property. Trustee is informed that Daystar has failed to pay property taxes for the years 2009 through 2012 and that the total of unpaid taxes approximates $60,000. Under Louisiana law, property taxes accrue interest at the rate of 1% per month and are also subject to a 5% penalty upon redemption. Trustee is informed that the 3 year redemptive period for unpaid taxes under Louisiana law may expire in June 2013, resulting in the Subject Property being adjudicated property of Ascension Parish, Louisiana.

## TERMS OF SALE AGREEMENT

8. Subject to Bankruptcy Court approval and overbidding at a duly noticed hearing, Trustee has entered into a sale agreement with Assignee regarding the estate's interest in the Judgment ("Sale Agreement"). The essential terms of the Sale Agreement include the following: (1) Assignee shall purchase and Trustee shall sell the bankruptcy estate's interest in the Judgment for the purchase price of $150,000, payable as follows: (a) $10,000 deposit due upon execution of the Sale Agreement (non-refundable in all events except if Assignee is out bid or the agreement is not approved by the Bankruptcy Court); and (b) $140,000 due within 72 hours of entry of Bankruptcy Court order approving the Sale Agreement; (2) upon entry of Bankruptcy Court order approving the Sale Agreement, Trustee shall execute an assignment assigning the bankruptcy estate's interest in the Judgment to Assignee without representation or warranty; and (3) the obligations of the parties are conditioned upon there being no further judgments recorded against and encumbering the Louisiana Property prior to entry of Bankruptcy Court order approving the Sale Agreement.

# BASIS FOR RELIEF SOUGHT

## I.   The Sale Agreement Should Be Approved Pursuant to FRBP 9019.

To the extent that the Sale Agreement is considered a compromise under Federal Rule of Bankruptcy Procedure 9019 of the estate's claims with respect to the Judgment, the Court should consider whether the agreement is fair and equitable. *In re Planned Protective Service, Inc.*, 130 B.R. 94, 96 (Bankr. C.D. Cal. 1991). In evaluating the fairness, reasonableness, and adequacy of a compromise, the Court should consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interest of the creditors. *In Re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988), citing *In Re A & C Properties*, 784 F.2d 1377, 1381, cert. denied 107 S.Ct. 189 (1986).

### A.   The probability of success in the litigation.

This factor is not applicable because the estate has already obtained the Judgment against Daystar.

### B.   The difficulties to be encountered in collection.

This factor weighs in favor of the Sale Agreement. Other than the Subject Property, Trustee is unaware of any assets of Daystar that could be executed upon to satisfy the Judgment, and as stated above, the estate holds a junior lien against the Subject Property. It is unknown whether a foreclosure by a senior lienholder will result in a foreclosure sale sufficient to satisfy all priority liens and associated costs, including a 3% sheriff's commission, and provide a greater return to the estate than the sure $150,000 provided by the Sale Agreement. Also, in order for Trustee to initiate a foreclosure against the Subject Property, Trustee will need to first take legal action to domesticate the Judgment, and any such executory action against the Subject Property will require employment of Louisiana legal counsel. Furthermore, under Louisiana law, if a junior lienholder attempts to foreclose, the property cannot be sold unless the price offered by the highest bidder at the foreclosure sale is sufficient to discharge the costs of sale and all superior security interest. LA. C.C.P. Art. 2337. Thus, absent the Sale Agreement, it is possible that the estate could become a sold-out junior lienholder and receive nothing on account of the Judgment.

1     **C.    The complexity, expense, and inconvenience of the litigation involved.**

This factor weighs in favor of the Settlement. As noted above, in order to take executory action against the Subject Property, Trustee must first take action to domesticate the Judgment and employ Louisiana counsel. The inconvenience and expense of taking such action favors the Sale Agreement, particularly given that depending on the unknown results of a foreclosure sale, taking such action may result in less return to the estate than the proposed Sale Agreement. The law favors compromise and not litigation for its own sake. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976).

    **D.    The paramount interest of the creditors.**

This factor weighs in favor of the Settlement. Courts can give weight to the opinions of the trustee, the parties, and their attorneys. *In re Blair, supra*, 538 F.2d at 851. It is Trustee's opinion that the Sale Agreement is in the best interest of the estate because the agreement provides a sure recovery of $150,000. This is particularly important in this case given the risks associated with awaiting the results of a foreclosure against the Subject Property. Moreover, the Sale Agreement enables an efficient administration of the estate without the expense and delay associated with awaiting a foreclosure by a senior lienholder or taking action necessary to initiate a foreclosure of the estate's junior lien. Furthermore, by accepting the Sale Agreement, the monies that would have been spent on collection efforts can remain in the bankruptcy estate for the benefit of estate creditors. Thus, the paramount interest of the creditors favors the Sale Agreement.

**II.    The Settlement Should Be Approved Pursuant to 11 U.S.C. § 363(b).**

Pursuant to 11 U.S.C. 363(b), Trustee can sell property of the estate other than in the ordinary course of business after notice and hearing. A sale under Section 363(b)(1) must have a valid business justification and be proposed in good faith. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. BAP 1996). For the reasons detailed above, the Sale Agreement has a valid business justification and is in the best interest of the estate. The Sale Agreement provides a sure recovery to creditors and accounts for the risks associated with foreclosure and the costs and delay associated with the same. Moreover, while no third parties have expressed an interest in purchasing the estate's interest in the Judgment, interested parties will have an opportunity to submit competing bids as the Sale Agreement is subject to overbidding at the sale hearing. As such, the Sale

1 Agreement has been proposed in good faith.

2 **WHEREFORE**, Trustee prays that his motion be granted, and for such other and further
3 relief as is necessary and proper.

4 Dated: April 15, 2013        **DESMOND, NOLAN, LIVAICH & CUNNINGHAM**

6 By: _____
   **J. LUKE HENDRIX**
7 Attorneys for J. Michael Hopper, Trustee